## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## COLUMBUS DIVISION

| | | |
|---|---|---|
| U.L.M., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Case No. 4:24-cv-110-AGH |
| | : | |
| COMMISSIONER OF | : | |
| SOCIAL SECURITY, | : | |
| | : | |
| Defendant. | : | |

## <u>ORDER</u>

The Social Security Commissioner, by adoption of the Administrative Law Judge's ("ALJ's") determination, denied Plaintiff's applications for disability insurance benefits and supplemental security income, finding that she is not disabled within the meaning of the Social Security Act and accompanying regulations. Plaintiff contends the Commissioner's decision was in error and seeks review under the relevant provisions of 42 U.S.C. §§ 405(g) and 1383(c). All administrative remedies have been exhausted.  Both parties filed their written consent for all proceedings to be conducted by the United States Magistrate Judge, including the entry of a final judgment directly appealable to the Eleventh Circuit Court of Appeals pursuant to 28 U.S.C. § 636(c)(3).  As explained below, the Court agrees that the Commissioner's decision was in error; that decision is reversed and remanded for further proceedings consistent with this opinion.

## LEGAL STANDARDS

### I.    Standard of Review

The Court's review of the Commissioner's decision is limited to a determination of whether it is supported by substantial evidence and whether the correct legal standards were applied. *Walker v. Bowen*, 826 F.2d 996, 1000 (11th Cir. 1987). "Substantial evidence is something more than a mere scintilla, but less than a preponderance. If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (internal citation and quotation marks omitted). The Court's role in reviewing claims brought under the Social Security Act is a narrow one. The Court may neither decide facts, re-weigh evidence, nor substitute its judgment for that of the Commissioner.[1] *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). It must, however, decide if the Commissioner applied the proper standards in reaching a decision. *Harrell v. Harris*, 610 F.2d 355, 359 (5th Cir. 1980).[2] The Court must scrutinize the record as a whole to determine the reasonableness of the Commissioner's factual findings. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). However, even if the evidence preponderates against the Commissioner's decision, it must be affirmed if substantial evidence supports it. *Id.*

---

[1] Credibility determinations are left to the Commissioner and not to the courts. *Carnes v. Sullivan*, 936 F.2d 1215, 1219 (11th Cir. 1991). It is also up to the Commissioner and not to the courts to resolve conflicts in the evidence. *Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Graham v. Bowen*, 790 F.2d 1572, 1575 (11th Cir. 1986).

[2] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decision of the former Fifth Circuit rendered prior to October 1, 1981.

## II.     Plaintiff's Burden

The claimant bears the initial burden of proving she is unable to perform her previous work. *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986). The claimant's "burden is a heavy one, so stringent that it has been described as bordering on the unrealistic." *Oldham v. Schweiker*, 660 F.2d 1078, 1083 (5th Cir. 1981). A claimant seeking Social Security disability benefits must demonstrate they suffer from an impairment that prevents them from engaging in any substantial gainful activity for a twelve-month period. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). In addition to meeting the requirements of the statute, in order to be eligible for disability payments, a claimant must meet the requirements of the Commissioner's regulations promulgated pursuant to the authority given in the Social Security Act. 20 C.F.R. § 404.1, *et seq*.; 20 C.F.R. § 416.101 *et seq.*

## III.     Disability Standard

Under the regulations, the Commissioner uses a five-step procedure to determine if a claimant is disabled. *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004); 20 C.F.R. §§ 404.1520(a)(1), 416.920(a)(1). First, the Commissioner determines whether the claimant is working. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is "working and the work [the claimant is] doing is substantial gainful activity," the Commissioner will find that the claimant is not disabled. *Id.* §§ 404.1520(b), 416.920(b). Second, the Commissioner determines the severity of the claimant's impairment or combination of impairments. *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). A claimant must have a "severe impairment"

3

which is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." *Id.* §§ 404.1520(c), 416.920(c). Third, the Commissioner determines whether the claimant's severe impairment(s) meets or equals an impairment listed in Appendix 1 to subpart P of Part 404 of the regulations (the "Listing"). *Id.* §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). Fourth, the Commissioner determines whether the claimant's residual functional capacity ("RFC") can meet the physical and mental demands of past work. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). Fifth and finally, the Commissioner determines whether the claimant's RFC, age, education, and past work experience prevent the performance of any other work. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). In arriving at a decision, the Commissioner must consider the combined effects of all the alleged impairments, without regard to whether each, if considered separately, would be disabling. *Id.* §§ 404.1523(c), 416.923(c). The Commissioner's failure to apply correct legal standards to the evidence is grounds for reversal. *Cooper v. Comm'r of Soc. Sec.*, 521 F. App'x 803, 806 (11th Cir. 2013).

## BACKGROUND

Plaintiff applied for disability insurance benefits and supplemental security income on February 8, 2016, alleging that she became disabled to work on November 20, 2014.[3] Tr. 18. She later amended her alleged onset date to October 23, 2018. *Id.* On the alleged disability-onset date, Plaintiff was forty-nine years old. Tr. 113. She

---

[3] The Court cites to the record using the Commissioner's Bates-stamped page numbers at the bottom right of each page as opposed to the Court's CM/ECF number at the top right of the page.

has a high school education and some college. Tr. 116. Her claims were denied initially on May 17, 2016, and upon reconsideration on February 8, 2017. Tr. 18. She timely requested an evidentiary hearing before an ALJ, and one was held on June 22, 2021. *Id.* During the hearing, an impartial vocational expert ("VE") testified that Plaintiff's past relevant work included a home care or personal care attendant (Dictionary of Occupational Titles ("DOT") #354.677-014), call center mailroom operator (DOT #209.687-026), van or bus driver (DOT #913.663-018), and daycare teacher (DOT #359.677-018), but the VE only identified a mailroom operator as past work that a person with Plaintiff's RFC could do as generally performed. Tr. 132-33. On July 21, 2021, the ALJ issued an unfavorable decision denying Plaintiff's claim. Tr. 18-30. While summarizing his findings as to past relevant work, the ALJ— consistent with the VE's testimony—only identified a mailroom operator as one the Plaintiff could perform with her RFC. Tr. 29-30. Plaintiff sought review by the Appeals Council but was denied on March 8, 2022. Tr. 1-8. Plaintiff then filed a complaint in this Court, seeking review under 42 U.S.C. § 405(g). *U.L.M. v. Comm'r of Soc. Sec. Admin.*, 4:22-cv-83-MSH (M.D. Ga. May 4, 2022). Pursuant to a consent motion, the Court remanded the case to the Commissioner for further administrative proceedings. Tr. 1357-58.

Upon remand, the Appeals Council remanded the case back to the ALJ. Tr. 1364-66. On February 15, 2024, the ALJ held a second evidentiary hearing. Tr. 1276, 1307-52. Plaintiff appeared with her attorney and testified, as did an impartial VE. *Id.* During the hearing, the VE identified a nursery school attendant—which has the

5

same DOT number as a daycare teacher—as past relevant work that an individual with Plaintiff's RFC could perform. Tr. 1344-48. The VE noted, however, that the role of nursery school attendant was generally performed at a light exertional level whereas Plaintiff had performed it at a medium level. Tr. 1344-46. In contrast to the 2021 hearing, the VE testified that Plaintiff would not be able to perform her past relevant work as a mailroom operator. Tr. 1344-45.

On April 30, 2024, the ALJ again issued an unfavorable decision denying Plaintiff's claim. Tr. 1273-1306. In conducting the five-step sequential analysis, the ALJ found, at step two, that Plaintiff has severe impairments of bilateral knee degenerative joint disease, left upper extremity thumb arthritis and carpal tunnel syndrome, cervical and lumbar degenerative disc disease, and obesity. Finding 3, Tr. 1280-84. The ALJ next found, at step three, that these impairments, considered both alone and in combination with one another, neither meet nor medically equal a listed impairment set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1. Finding 4, Tr. 1284-85. Between steps three and four, the ALJ determined that Plaintiff retains the RFC to perform light work with exertional, postural, and environmental limitations, including limitations on Plaintiff's use of her left upper extremity. Finding 5, Tr. 1285-93. At step four, the ALJ found this RFC did not inhibit Plaintiff from past relevant work as a nursery school attendant. Finding 6, Tr. 1293-95. The ALJ noted that the DOT classified a nursery school attendant as "performed at the light exertional level, consistent with the broad exertional limitations set forth" in the

Plaintiff's RFC. Tr. 1294. Therefore, the ALJ found Plaintiff to be not disabled to work. Finding 7, Tr. 1295. He did not make an alternate step-five finding.

Because Plaintiff did not file written exceptions with the Appeals Council, and the Appeals Council did not assume jurisdiction on its own within sixty days, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. §§ 404.984(a),(c), 416.1484(a),(c). Plaintiff now seeks judicial review of the Commissioner's final decision denying her applications for benefits. Her case is ripe for review. 42 U.S.C. §§ 405(g), 1383(c)(3).

## DISCUSSION

Plaintiff raises two enumerations of error. First, she contends that the ALJ erred in finding that her job as a nursery school attendant qualified as past relevant work. Pl.'s Br. 5-7, ECF No. 11. Second, she argues that the ALJ erred in evaluating the opinion of treating physician, Dr. Mohammed Y. Pathan. *Id.* at 8-14. Because the Court agrees that the ALJ erred in finding Plaintiff's job as a nursery school attendant to be past relevant work, it remands on those grounds and declines to address Plaintiff's second enumeration of error.

## I.    Commissioner's Guidelines for Determining Past Relevant Work

At step four of the sequential process, the ALJ must determine whether a claimant's RFC can meet the physical and mental demands of past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). As it applies to Plaintiff, past relevant work is defined under the regulations as "work that [a claimant has] done within the past fifteen years, that was substantial gainful activity, and that lasted

long enough for [the claimant] to learn to do it."[4]  *Id.* §§ 404.1560(b)(1), 416.960(b)(1).

"Substantial gainful activity is work activity that is both substantial and gainful[.]"

*Id.* §§ 404.1572, 416.972.  "Substantial work activity is work activity that involves

doing significant physical or mental activities," and it "may be substantial even if it

is done on a part-time basis[.]"  *Id.* §§ 404.1572(a), 416.972(a).  "Gainful work activity

is  work  activity  that  [a claimant does]  for  pay  or  profit."    *Id.*  §§ 404.1572(b),

416.972(b).

"Generally, if [a claimant] worked for substantial earnings, [the ALJ] will find

that [the claimant is] able to do substantial gainful activity."  *Id.* §§ 404.1574(a)(1),

416.974(a)(1).  If a claimant's average monthly earnings fall below established

guidelines, the ALJ will generally consider that the earnings show the claimant to

have engaged in substantial gainful activity.  20 C.F.R. §§ 404.1574(b)(3)(i),

416.974(b)(3)(i); *see* Social Security Administration Program Operations Manual

System ("POMS") DI 10501.015, available at https://secure.ssa.gov/apps10/poms.nsf/

lnx/0410501015 (last visited Aug. 18, 2025) (setting forth average monthly income

levels by calendar year, above which the earnings of an employee indicate substantial

gainful activity).

Further, the ALJ "will generally not consider other information in addition to

[a claimant's] earnings except" when "there is evidence that [the claimant] may be

engaging in substantial gainful activity or that [the claimant is] in a position to

---

[4]  Effective June 24, 2024, the regulations were amended to provide that past relevant work is limited to work done by the claimant in the past five years.

control when earnings are paid to [the claimant] or the amount of wages paid to [the claimant.]" 20 C.F.R. §§ 404.1574(b)(3)(i)-(ii), 416.974(b)(3)(i)-(ii).  An example of the latter situation is a claimant who is "working for a small corporation owned by a relative."  *Id.*  Examples of other information the ALJ may consider include "whether [the claimant's] work is comparable to that of unimpaired people in [the claimant's] community who are doing the same or similar occupations as their means of livelihood, taking into account the time, energy, skill, and responsibility involved in the work" and where the claimant's "work, although significantly less than that done by unimpaired people, is clearly worth the amounts shown in [the guidelines], according to pay scales in [the claimant's] community."  *Id.* §§ 404.1574(b)(3)(ii), 416.974(b)(3)(ii).

The regulations also set forth how an ALJ is to determine average monthly earnings.  If the claimant's work "was continuous without significant change in work patterns or earnings, and there has been no change in the substantial gainful activity earnings levels," the ALJ will average the claimant's earnings "over the entire period of work requiring evaluation to determine if [the claimant has] done substantial gainful activity."  *Id.* §§ 404.1574a(a), 416.974a(a).  However, if the claimant "work[ed] over a period of time during which the substantial gainful activity earnings levels change, [the ALJ] will average [the claimant's] earnings separately for each period in which a different substantial gainful activity earnings level applies."  *Id.* §§ 404.1574a(b), 416.974a(b).  Additionally, "[if] there is a significant change in [the claimant's] work pattern or earnings during the period of work requiring evaluation,

[the ALJ] will average [the claimant's] earnings over each separate period of work to determine if any of [the claimant's] work efforts were substantial gainful activity." *Id.* §§ 404.1574a(c), 416.974a(c).

## II.    The ALJ Erred at Step Four in Finding Plaintiff's Employment as a Nursery School Attendant to be Past Relevant Work

The ALJ identified Plaintiff's gross yearly earnings as a nursery school attendant to be $9,954.03 in 2017 and $5,106.81 in 2018. Tr. 1294, 1541-42. Noting that Plaintiff was hired on March 16, 2017, the ALJ then broke down Plaintiff's quarterly earnings as $2,994 in the second quarter of 2017, $3,524 in the third quarter of 2017, and $3,125 in the fourth quarter of 2017. Tr. 1294, 334. He listed her quarterly earnings in 2018 as $2,832 in the first quarter and $2,275 in the second. *Id.* He observed that Plaintiff's employment ended in July 2018. Tr. 1294.

In calculating whether Plaintiff's earnings were sufficient to constitute substantial gainful activity, the ALJ identified the guidelines monthly earning levels as $1,170 in 2017 and $1,180 in 2018. Tr. 1294; *see* POMS, DI 10501.015. The ALJ then stated, "By average of quarterly earnings over the period earned, this employment rose to the level of substantial gainful activity for the three months worked in the third quarter of 2017." Tr. 1294. The average monthly earning levels for the third quarter of 2017 was $1,174.67, which was just $4.67 over the guideline earning levels for 2017. *See* POMS, DI 10501.015. Finding that Plaintiff satisfied the additional elements of having performed the job within the relevant time period— the previous fifteen years—and long enough to learn how to do it, the ALJ found that

10

"nursery school attendant constitutes the claimant's past relevant work." Tr. 1294. By calculating Plaintiff's monthly earnings in this manner, the ALJ erred.

In separating Plaintiff's work in 2017 and 2018, the ALJ complied with the regulations because the substantial activity earning levels changed. 20 C.F.R. §§ 404.1574a(b), 416.974a(b) ("If you work over a period of time during which the substantial gainful activity earnings levels change, we will average your earnings separately for each period in which a different substantial gainful activity earnings level applies."). However, the ALJ's isolation of the 2017 third quarter earnings from the second and fourth quarters in 2017 to find earnings above the guidelines did not comply with regulations. The "period in which a different substantial gainful activity earnings level applies" was all three quarters Plaintiff worked in 2017, not just one isolated quarter. *See* SSR 83-35, 1983 WL 31257, at *4 (Jan. 1, 1983) (explaining that when substantial gainful activity levels change, earnings "are averaged over each period for which a different SGA level applies."). Using the average of just one quarter *within the same earnings level* was error. *See Leslie B. v. Kijakazi*, No. 2:20-cv-11770-MAA, 2022 WL 22885484, at *3 (C.D. Cal. Jan. 1, 2022) (remanding where the ALJ singled out earnings from the fourth quarter of 2019 without including earnings from the third quarter); *Fox v. Saul*, No. 17 C 3433, 2020 WL 6894935, at *3-4 (N.D. Ill. Nov. 24, 2020) (finding ALJ erred by relying on one quarter in 2014 to find that the claimant's earnings were above the guidelines levels); *Martinez v. Colvin*, No. C13–1552–JLR,  2014 WL 1663359, at *5-7 (W.D. Wash. Apr. 25, 2014)

(finding that the ALJ erred by considering only one quarter within a period where the guidelines earning levels were the same).

Had the ALJ averaged Plaintiff's earnings over all three quarters of 2017, her average earnings would have been $1,071.44, which was below the guideline earnings level of $1,170. Had the ALJ only averaged the third and fourth quarters of 2017, Plaintiff's average earning levels would also have been $1,108.16, which was also below the threshold amount. The average monthly earnings for 2018 was $851.16, which was below the 2018 earnings guidelines of $1,180. In fact, the only way the ALJ could average Plaintiff's earnings to land on an amount above the earnings guidelines was to isolate the third quarter of 2017. Because the ALJ erred in calculating Plaintiff's average monthly earnings, and his finding that Plaintiff's work as a nursery school attendant was substantial gainful activity is not supported by substantial evidence, this case must be remanded.

The Commissioner contends the ALJ's analysis was proper because there were "significant changes in earnings in Plaintiff's nursery school job over her time working there." Def.'s Br. 6, ECF No. 14. As previously noted, when a claimant has experienced a "significant change in [the claimant's] work pattern or earnings during the period of work requiring evaluation, [the ALJ] will average [the claimant's] earnings over each separate period of work to determine if any of [the claimant's] work efforts were substantial gainful activity." 20 C.F.R. §§ 404.1574a(c), 416.974a(c). However, the fact that there is some fluctuation in income does not necessarily entail that there has been a "significant change" in earnings. The Social

12

Security Administration's policy statement specifically contemplates that a claimant's earnings may "vary somewhat month-to-month," and for that reason, "it may be necessary to average the 'countable earnings' reported over a number of months in order to compare those earnings with the applicable monthly amount in the Earnings Guidelines." SSR 83-35, 1983 WL 31257, at *2.

As has been noted, "there is little case law interpreting the meaning of 'significant change' under the[] regulations." *Tureskis v. Saul*, No. 8:19-cv-2263-T-SPF, 2021 WL 363604, at *5 (M.D. Fla. Feb. 3, 2021) (citing *Proffitt v. Colvin*, No. 7:15-cv-493, 2017 WL 536076, at *3 (W.D. Va. 2017)).  However, there appears to be no significant change in Plaintiff's earnings.  Plaintiff's average monthly earnings were $998 in the second quarter of 2017, $1,174.67 in the third quarter of 2017, $1,041.67 in the fourth quarter of 2017, $944 in the first quarter of 2018, and $758.33 in the second quarter of 2018.  The difference between the second and third quarter of 2017 was $176.67, a mere 17.7% increase, and the difference between the third and fourth quarter of 2917 was $133, an even smaller 12.7% increase.  Thus, there was no apparent justification for the ALJ to treat the third quarter separately from the other two.  *See Shepard v. Astrue*, No. 5:10–CV–323, 2011 WL 5419852, at *5 (D. Vt. Oct. 12, 2011) ("I am not persuaded that [the plaintiff's] earnings' fluctuation of approximately one hundred and twenty five to two hundred dollars each quarter, as described by the Commissioner [], or between $500 and $800 each quarter, as documented in the record [], is necessarily significant.") (internal quotation marks omitted)), *recommendation adopted by* 2011 WL 5443064 (D. Vt. Nov. 9, 2011).  The

only true outlier in Plaintiff's earnings was the second quarter of 2018, which actually represented a sharp *decrease* and did not figure in the ALJ's calculations anyway.

More significantly, the ALJ did not cite a significant change in Plaintiff's earnings or work pattern to support his finding that Plaintiff's work as a nursery school worker constituted substantial gainful activity. Thus, the explanation given by the Commissioner now is not one given by the ALJ. The Court "decline[s] to affirm using reasoning that 'might have supported the ALJ's conclusion' but was not offered by the ALJ himself." *Hubbard v. Colvin*, 643 F. App'x 869, 873 (11th Cir. 2016) (quoting *Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir.1984)); *see Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987) ("Where we cannot determine from the ALJ's opinion whether the ALJ applied the statutory requirements and the Secretary's regulations as construed by this circuit, we cannot effectively perform our duty to ensure that the proper regulatory requirements were in fact applied."). Numerous other district courts have remanded in these circumstances. *See Leslie B.*, 2022 WL 22885484, at *3 (noting that ["a]lthough it is possible that a significant change in work pattern or earnings had occurred, it was not stated in the ALJ's decision"); *Fox*, 2020 WL 6894935, at *4 (rejecting the Commissioner's argument that the district court could affirm based on a significant change in the plaintiff's earnings where the ALJ did not make that finding in his decision); *Martinez*, 2014 WL 1663359, at *7 ("The Court . . . declines the Commissioner's invitation to insert a finding that plaintiff has the ability to engage in SGA, even if his earnings did not meet presumptive SGA levels, into the ALJ's written decision."); *Shepard*, 2011 WL

5419852, at *5 ("Although significant changes in Shepard's earnings . . . perhaps *could* justify the ALJ's failure to average Shepard's earnings over the entire period of work, it cannot be discerned from the ALJ's decision or the record as a whole that the ALJ actually applied and relied on this regulation as a basis for averaging Shepard's earnings merely over certain quarters of work."); *Whittaker v. Comm'r of Soc. Sec.*, No. 09–11463, 2010 WL 1416824, at *3 (E.D. Mich. Apr. 2, 2010) (remanding where "there [was] no finding anywhere in the administrative record that Plaintiff had undergone a significant change in her work pattern or earnings in June of 2000 as compared to the surrounding months" (internal quotation marks omitted)).[5]

The Commissioner argues that Plaintiff "invited" error because her "attorney did not object to any of the VE's testimony, did not challenge the VE or the ALJ when they discussed the nursery school attendant as being Plaintiff's past relevant work, and had no objection to the exhibits in the record, which included Plaintif's earning records." Def.'s Br. 4-5. In support, the Commissioner cites *Schlegel v. Commissioner of Social Security*, No. 6:16-cv-1236-Orl-DCI, 2017 WL 2379811 (M.D. Fla. June 1, 2017). *Id.* However, in that case, the plaintiff failed to dispute how much of his earnings were from the work at issue during the administrative hearing, and the evidence in the record otherwise supported a finding that the earnings were above the guidelines level. *Schlegel*, 2017 WL 2379811, at *3.

---

[5] Although not argued by the Commissioner, the ALJ's decision cannot be supported by the circumstances set forth in 20 C.F.R. §§ 404.1574(b)(3)(ii), 416.974(b)(3)(ii), which allow an ALJ to consider information other than earnings to determine that a claimant engaged substantial gainful activity. Again, that was not a rationale provided by the ALJ, whose finding was explicitly based on Plaintiff's earnings being above the guidelines level. Tr. 1294.

Similarly, in other cases where district courts have found waiver or invited error, it was where the plaintiff failed to challenge the job classification or evidence of her earnings. *See, e.g.*, *Garcia v. Kijakazi*, No. 8:22-cv-2175-AEP, 2023 WL 6890724, at *3-4 (M.D. Fla. Oct. 19, 2023) (rejecting plaintiff's challenge to her classification as a fast-food worker instead of a fast-food cook where she did not raise the issue with the ALJ); *Cooper v. Comm'r of Soc. Sec.*, No: 6:18-cv-1352-Orl-37LRH, 2019 WL 3097541, at *7 (M.D. Fla. June 28, 2019) (rejecting the plaintiff's argument that her cleaning job was not past relevant work because she worked for three different companies and the record did not identify how much of that was from her job as a cleaner, noting that the plaintiff did not present evidence on the issue to the ALJ); *New v. Comm'r of Soc. Sec.*, No. 5:12–cv–211–OC–18PRL, 2013 WL 3804846, at *3-5 (M.D. Fla. July 8, 2013) (rejecting plaintiff's argument that her earnings did not show substantial gainful activity where she did not raise the issue at the hearing and the evidence showed that her earnings "exceed[ed] the $940 per month threshold set by the regulations").

Here, in contrast, there is neither a dispute that Plaintiff's job was properly classified as a nursery school attendant, nor is there an evidentiary dispute over how much she earned performing the job. The problem here is not that the record of Plaintiff's earnings is incomplete, but that the ALJ's decision that those earnings rose above the guidelines threshold is not supported by substantial evidence. And as other district courts have noted, even where a Plaintiff fails to object at a hearing, the ALJ's decision must still be supported by substantial evidence. *See Siakala v. Comm'r of*

*Soc. Sec.*, No. 8:22-cv-02464-NHA, 2024 WL 912428, at *7 (M.D. Fla. Mar. 4, 2024)
("But in each of the cases that Defendant cites, the court ultimately still found, as it
was required to, that substantial evidence supported the ALJ's finding about the past
relevant work."); *Gathers v. Comm'r of Soc. Sec.*, No. 6:22-cv-1692-WWB-LHP, 2023
WL 8530684, *6 (M.D. Fla. Oct. 4, 2023) (noting that in each of the cases cited by the
Commissioner to argue waiver, the "ALJ's decision regarding past relevant work was
supported by substantial evidence"); *Chacon v. Saul*, No. 8:19-cv-2371-T-TGW, 2020
WL 6624927, at *5 (M.D. Fla. Nov. 12, 2020) (rejecting as "meritless" the
Commissioner's argument that because the Plaintiff did not raise the issue, "the ALJ
was not obligated to specifically discuss the issue in his decision," stating that "it is
clear that the Commissioner's decision may not stand if his findings are not supported
by substantial evidence").

The Court also notes that "Social Security proceedings are inquisitorial rather
than adversarial.  It is the ALJ's duty to investigate the facts and develop the
arguments both for and against granting benefits[.]"  *Sims v. Apfel*, 530 U.S. 103,
110-11 (2000).  Applying this principle, the Ninth Circuit recently rejected the same
forfeiture argument the Commissioner raises here.  *Obrien v. Bisignano*, 142 F.4th
687, 693, 699 (2025).  In *Obrien*, the Commissioner argued that because Plaintiff did
not raise the issue before the ALJ, the plaintiff forfeited his objection to the ALJ's
finding that his prior work as a telemarketer was past relevant work under the
regulations.  *Id.* at 692.  The Ninth Circuit responded that it could "discern no basis
for imposing a judicially crafted requirement that [the plaintiff] was 'expected' to do

17

more 'to develop this issue' in order to preserve it for judicial review in the district court." *Id.* at 698 (quoting *Carr v. Saul*, 593 U.S. 83, 89 n.3 (2021)). The court explained:

> The question whether [the plaintiff's] telemarketing work constituted "past relevant work" under the regulations was not some extraneous or additional issue that, if not specifically called to the ALJ's attention, the ALJ would have no occasion to decide. On the contrary, as the ALJ himself recognized, the issue *inheres* in the five-step disability evaluation process that the ALJ was *required* to follow in determining whether [the plaintiff] was disabled within the meaning of the Act. Even granting that the fundamentally inquisitorial ALJ proceedings used in Social Security disability cases have some adversarial aspects, *see* [*Carr*, 593 U.S. at 90-92], *this* issue, which is inherent in the five-step process, relates more to the inquisitorial aspects of those proceedings, under which the SSA "assures claimants that it 'will consider *at each step of the review process* any information you present as well as all the information in our records.,'" *id.* at 90[] (emphasis added) (quoting *Sims*, 530 U.S. at 111 [] (quoting 20 C.F.R. § 404.900(b) (1999))).

*Id.* at 698-99. "[I]mportantly," the court further emphasized, "the contentions that [the plaintiff] raised in the district court did not involve the presentation of new evidence or information that had not been presented to the ALJ . . . . His argument was simply that, in light of the regulatory standards the ALJ himself stated he was applying, the determinations made by the ALJ were not supported by substantial evidence." *Id.* at 699. The court concluded that the ALJ "did not need to be reminded by the [plaintiff] that, in order to render a decision on that particular ground, the ALJ had to evaluate whether the record evidence supported all of the findings that were necessary for that determination under the applicable legal standards," and "[a]ccordingly, [the plaintiff] had no further responsibility to specifically flag the issue before the ALJ." *Id.*

18

Similarly, Plaintiff is not attempting to introduce new evidence before the district court. Her earnings information was in the record, and the Plaintiff and her attorney were in no better position than the ALJ to read them and apply the regulations. Plaintiff's is simply arguing that the ALJ's determination that her work as a nursery school attendant satisfied the regulatory standards for past relevant work is not supported by substantial evidence. For the reasons discussed above, the Court agrees. Therefore, this case is remanded.

## CONCLUSION

For the foregoing reasons, the determination of the Social Security Commissioner is reversed and remanded for further proceedings consistent with this opinion.

SO ORDERED, this 22nd day of August, 2025.

 s/ *Amelia G. Helmick*
UNITED STATES MAGISTRATE JUDGE